367 So.2d 18 (1978)
DYNAMIC EXPLORATION, INC., et al., Plaintiffs and Appellees,
v.
SUGAR BOWL GAS CORPORATION, Defendant and Appellant.
No. 12262.
Court of Appeal of Louisiana, First Circuit.
November 20, 1978.
Rehearings Denied January 16, 1979.
Writ Refused March 5, 1979.
*19 Blake G. Arata, John M. McCollam, New Orleans, for plaintiffs and appellees.
Lis Kow & Lewis, John M. Wilson, Frederick W. Bradley, New Orleans, for defendant and appellant.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
CHIASSON, Judge.
By a written contract dated June 3, 1974, amended on June 16, 1976, Dynamic Exploration, Inc., Comprehensive Resources Corporation, John A. Gordon, Paul LaCoste, Robert W. Polchow, Jack V. Foster and R. L. Roundtree (hereafter collectively known as Dynamic) entered into a gas purchase agreement with Sugar Bowl Gas Corporation (Sugar Bowl) for the sale and purchase of all the natural gas produced from specified mineral leases owned and/or controlled by Dynamic. During July of 1976 Sugar Bowl discovered that through error it had overpaid Dynamic for gas delivered to Sugar Bowl during the period from July, 1974 through May 31, 1976. Sugar Bowl recovered its overpayment by set-off against the amount owed to Dynamic for gas purchased during the months of June, July, August, September and October of 1976. In August, Dynamic brought a mandamus action against Sugar Bowl under the provision of La.R.S. 31:21 but amended its proceedings in October of 1976 to an ordinary proceeding against Sugar Bowl to recover the amount due for the months of June, July, August, September and October of 1976. Sugar Bowl answered the petition asserting the overpayment and pleading set-off as an affirmative defense. Sugar Bowl also filed a reconventional demand based on its claim for overpayment seeking a judgment for the full amount of overpayment should its set-off be denied and any money awarded Dynamic.
There are two time periods involved in this litigation, one is July 1974 through *20 June 1975 and the other is July 1975 through May 1976. These times are important relative to the error made and to the interpretation of a particular clause in the contract. The error that Sugar Bowl discovered in July of 1976 was its use of the wrong orifice coefficient in the formula utilized to compute the quantity of gas purchased. This incorrect orifice coefficient had been used from the time of the first delivery of gas to Sugar Bowl in July of 1974. Thus from July of 1974 until its discovery in July of 1976, the error caused Sugar Bowl to overpay Dynamic the sum of $294,702.65.
Trial was held on January 14, 1977 and the court took the matter under advisement. On March 14, 1978, the trial court rendered judgment and assigned written reasons. Sugar Bowl was required to pay Dynamic $198,005.62 on the following basis:
1. Sugar Bowl could not question the accuracy of its computations for the period of July 1974 through June 1975 because of a contractual provision and because of Sugar Bowl's negligence in causing the error and therefore Dynamic was entitled to $162,480.15.
2. Dynamic was allowed to recover only $26,598.58 paid to royalty owners and $8,926.89 paid in severance taxes to the State for the period of July 1975 through May 1976 since the money Sugar Bowl overpaid in this period occurred during the year preceding Sugar Bowl's discovery of the error.
The trial court also denied Sugar Bowl's reconventional demand. It is from this judgment that Sugar Bowl appeals. Dynamic answered the appeal seeking an increase in the award.
Sugar Bowl specified eight separate errors which we have listed as follows:
1. The district court erred in construing subparagraph (h) of Article B-I of the contract as applying to volume calculations of the nature in which the error at issue in this case was made, and in applying subparagraph (h) against Sugar Bowl so as to deny to it the recoupment of the amount paid by it through error to Dynamic.
2. The district court erred, even under its own construction of subparagraph (h) by allowing Sugar Bowl to recover the erroneous overpayment only for the most recent eleven month period, rather than for a twelve month period.
3. The district court erred in finding that Sugar Bowl failed to pay plaintiffs for natural gas it received from them during the months of June, July, August, September and October, 1976, in that the evidence before the court showed that said natural gas had been paid for in effect in advance by Sugar Bowl.
4. The district court erred in finding, without citing any factual basis, that one of Sugar Bowl's employees was negligent in her computation of the volume of gas delivered, and in finding that her superiors in the company were negligent in not properly supervising her work and checking the accuracy of her calculations.
5. The district court erred in holding that negligence on the part of Sugar Bowl would preclude it from recovering amounts paid to Dynamic through error.
6. The district court erred in considering evidence of a 1975 audit of records regarding Btu content of gas as bearing upon the question of negligence in making or perpetuating the error at issue in this lawsuit, in that such information is irrelevant to the question of negligence regarding the second error, and in that the district court ruled that evidence regarding other errors was irrelevant unless a pattern of negligence could be established.
7. The district court erred in denying to Sugar Bowl its recoupment of those amounts erroneously paid to Dynamic between July, 1975 and May, 1976 which were purportedly paid by Dynamic to third parties (i. e. $26,598.58 to royalty owners and $8,926.89 to the State of Louisiana as severance taxes), in that Dynamic failed to prove with certainty that these amounts were paid to such third parties and were not or could not be recovered from said third parties.

*21 8. The district court erred in failing to hold that Dynamic did not properly mitigate its damages, and in failing to hold that because of the failure to mitigate damages, Dynamic is not entitled to recover the damages sought.
In its answer to Sugar Bowl's appeal, Dynamic contends that Sugar Bowl's negligence in causing the error precludes Sugar Bowl from recovering any portion of the overpayment and prays that its award be increased to the full amount of the overpayment.
Because the error made by Sugar Bowl is so interrelated with the contractual obligations of the parties, some background information is necessary to lay the foundation for the dispute. This litigation revolves around the measurement of natural gas. Individual residences have a positive displacement meter that actually measures the volume of gas flowing into the home for use. However, gas measurement at the well site is a different process. The equipment installed in the field is of a different nature than that in a home. Initially certain basic information must be recorded and gathered to obtain the measurement of gas. This data is obtained by equipment attached at or near the well. The equipment will measure pressure base, pressure, temperature, flow temperature, the range of the static pressure gauge, the range of the differential pressure gauge, the type rotation on the clock, the orifice size and the meter tube. This raw data then has to be adjusted.
There is an accepted formula within the oil and gas industry to measure the quantity of gas delivered at the well site. The formula is an equation for computing the flow of gas through an orifice meter. The basic information from the equipment at the well, with no computation, is insufficient to determine the amount of gas delivered.
Critical to the computation is the orifice coefficient. To simplify, the size or diameter of the hole through which the gas flows (the orifice) and the meter readings from the equipment at the well site are the starting point from which is calculated the orifice coefficient. Using the base data a number of variables are then applied to calculate the orifice coefficient. The orifice coefficient is then put into a mathematical formula from which the quantity of gas delivered is determined. An incorrect orifice coefficient would mean the entire calculation is incorrect and therefore would indicate an incorrect quantity of gas.
By contract the parties provided for the installation of equipment needed to measure and test the gas to be delivered to Sugar Bowl. A great deal of the contract is devoted to the measurement and determination of the volume of gas delivered to the buyer, Sugar Bowl.
The contract also includes a specific section relating to the measurement and tests for the gas delivered. In the Measurement and Tests Section of the contract (Article B-I) there are a number of provisions relating to the actual physical measurement of the gas by the means of equipment installed at the well.
Article B-I, (1)(b) provides:
"(b) The volume of gas purchased and sold hereunder shall be measured by orifice meters installed and operated and computations made as prescribed in Gas Measurement Committee Report No. 3, dated April, 1955, of the American Gas Association, as the same may be amended from time to time, or by any other method agreed upon between parties hereto."
Further, Article B-I, (1)(h) provides:
"(h) Upon request, Buyer shall submit its measurement charts and records to any other party to this contract for examination, the same to be returned within twenty (20) days. Buyer's measurement charts and records for a given accounting month shall be conclusively presumed correct if no written objection thereto is served on Buyer within the twelve month period following the given accounting month, and at the end of such twelve month period the same may be destroyed." (Emphasis supplied).
*22 The major issue in this litigation revolves around the interpretation of the contract provisions as it relates to the determination of the volume of the gas delivered. In the instant case a Sugar Bowl employee utilized an incorrect orifice coefficient found in the 1929 Edition of Bulletin E-2, Orifice Meters, instead of the orifice coefficient found in the Gas Measurement Committee Report No. 3 of the American Gas Association as specified in Article B-I, (1)(b) of the contract. By using the wrong orifice coefficient the calculation was wrong and hence the incorrect quantity of gas delivered was derived.
Sugar Bowl argues it should be entitled to recover the overpayment. Dynamic argues that Sugar Bowl is precluded from asserting any overpayment at least for one year on the basis of the contract provision Article B-I, (1)(h) cited above.
Since Sugar Bowl did not discover its miscalculation until July, 1976, Dynamic argues that under Article B-I, (1)(h) the measurement charts and records for the first year, July 1974 through June 1975, are conclusively presumed correct as between the parties and, therefore, despite the overpayment by Sugar Bowl, Sugar Bowl cannot recover this money since they are contractually barred from doing so.
Sugar Bowl argues that Article B-I, (1)(h) does not include the calculations used to determine the amount of gas delivered but rather covers only the physical measurement of the gas taken at the well site.
In reviewing the testimony, we find that all parties were knowledgeable in the field of gas purchase agreements and both parties were in an equal bargaining position when the contract was negotiated and confected.
We hold that Article B-I, (1)(h) of the contract does not apply to the type of error involved in this case.
There is no dispute as to the correctness of the raw measurement data obtained at the well site. The testimony reveals that the raw measurement data, alone, is insufficient to determine the quantity of natural gas delivered. Other calculations applying accepted formulas and variables are necessary to arrive at the quantity of natural gas delivered. The error was made in the calculations, not in the raw measurement data.
Article B-I, (1)(h) of the contract does not mention the calculations or the volume of natural gas determined; the conclusive presumption established by this contract provision applies solely to the measurement charts and (measurement) records. This interpretation gives effect to the last sentence which allows Sugar Bowl to destroy the measurement charts and records at the end of the twelve month period. The contract provision is restricted to errors in the measuring equipment which would make it impossible to ascertain the correct quantity of natural gas delivered. In this case the quantity of natural gas delivered, the measurement charts and records, and the amount of the overpayment are not in dispute. Nor is it disputed that the overpayment was due to an erroneous calculation and that Sugar Bowl paid for natural gas it did not receive.
Civil Code Article 2302 provides that when one has paid through mistake, believing himself a debtor, he may reclaim what he had paid. Since the contract provision is not applicable, Sugar Bowl can look back to the beginning of the contract to recover its overpayment.
For these reasons, we reverse the trial court's decision which precluded Sugar Bowl from seeking the return of its overpayment for July of 1974 through June of 1975.
We affirm the trial court's decision allowing Sugar Bowl to retain the overpayment for the period of July, 1975 through May, 1976, thereby denying Dynamic its cause of action in seeking to recover from Sugar Bowl the amount already recouped in overpayment. This disposes of the first two specification of errors by Sugar Bowl.
However, the trial court did allow Dynamic to recover $26,598.58 it paid to royalty owners and $8,926.89 in taxes it paid to the State during July, 1975 through *23 May of 1976. We are of the opinion that the trial court erred as to these two items.
First, as to the payment to royalty owners the contract provides:

"ARTICLE B-IV ROYALTIES
"Seller shall bear and pay all royalties, overriding royalties, production payments, and other settlements of whatsoever kind and nature due in respect of production delivered hereunder, and shall hold Buyer harmless against all claims, losses, damages and expenses on account of such settlements."
Under this provision Dynamic, the Seller, alone is obligated to pay all royalties due in respect of production delivered under the contract. Dynamic's obligation to pay its royalty owners is based on the amount of money it received from Sugar Bowl. Sugar Bowl originally paid for gas it believed was delivered, but which was not actually delivered. Dynamic paid its royalty owners on the basis of Sugar Bowl's overpayment. The contract further states that Dynamic holds Sugar Bowl harmless against all claims, losses, damages and expenses as a result of paying such royalties. The hold harmless clause is without qualification. Dynamic by contract has agreed to hold Sugar Bowl harmless against Dynamic's claim for overpayment of royalties. For these reasons, the trial court erred in allowing Dynamic to recover from Sugar Bowl the sum of $25,598.58 that Dynamic paid to its royalty owners during July of 1975 through May of 1976.
Secondly, as to the payment to the State for taxes, we find that La.R.S. 47:1621 is pertinent. It states in part:
"§ 1621. Refunds of overpayments authorized
"A. For the purpose of this Chapter, `overpayment' means a payment of tax, penalty or interest when none was due, or the excess of the amount of tax, penalty or interest paid over the amount due; provided that the power of the collector to refund overpayments shall be as prescribed and limited in this Section.
"B. The collector shall make a refund of each overpayment where it is determined that:
(1) The tax was overpaid because of an error on the part of the taxpayer in mathematical computation; or" * * *
Clearly under this statute Dynamic can obtain a refund from the State for its overpayment of tax under (1) of paragraph (B). For these reasons the trial court erred in allowing Dynamic to recover from Sugar Bowl the amount of $8,926.89 paid to the State for the period of July, 1975 through May, 1976.
As we understand the trial court's decision as to July, 1975 through May, 1976, the judge upheld Sugar Bowl's affirmative defense of set-off or compensation for this time period. We agree with this subject to our decision regarding the moneys paid in taxes and royalties discussed above. Under this rationale we also would deny Sugar Bowl's reconventional demand. This disposes of the seventh specification of error and appellee's answer to the appeal.
The trial court found that Sugar Bowl and its employee were negligent in making the error which is the subject of this litigation, and that this negligence would also preclude Sugar Bowl from recovering any overpayment for the time period of July, 1974 through June of 1975. Both counsel have pointed out that if negligence is a bar to recovery for the payment of a thing not due, then the trial court's decision is inconsistent because Sugar Bowl's negligence is the same for the entire time period in dispute.
The Louisiana Civil Code provides:
"Art. 2301. Obligation to restore thing unduly received
"Art. 2301. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
"Art. 2302. Right to reclaim thing unduly paid

*24 "Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."
We find it significant that neither the Civil Code nor the French commentators mentions that a person's negligence in paying a thing not due would bar his recovery. We are also aware of the line of jurisprudence which holds that there is a defense of negligence to a payment of a thing not due. See Comment, Quasi ContractPayment in ErrorRecoveryArticle 2302, Louisiana Civil Code of 1870, 20 Tul.L.Rev. 618-621. See Palmer, Contractual Negligence in the Civil LawThe Evolution of a Defense to Actions of Error, 50 Tul.L.Rev. 1.
C.C. art. 2301 must be read together with C.C. art. 2302. When they are read together, it is found that C.C. art. 2301 is subject to a requirement that the payment has been made through mistake. Rivers v. New Orleans Water Works Company, 35 La.Ann. 822 (1883); See also Planiol, Civil Law Treatise, Volume 2, Section 840 (LSU translation, 1959). We find that the overpayment in the instant case was made because of a mistake. An employee of Sugar Bowl testified the mistake was made because all of Sugar Bowl's other contracts referred to the 1929 book and in the daily course of work the 1929 book was still utilized. Because the wrong coefficient was inserted in the computation, Sugar Bowl paid for natural gas not received by it.
Additionally, we adhere to what we believe to be the proper interpretation of the Code and the one which a majority of cases follow, namely that negligence per se is not a bar to recovery for the payment of a thing not due. Central Surety &Ins. Corp. v. Corbello, 74 So.2d 341 (La.App. 1st Cir. 1954); Continental Oil Company v. Jones, 191 So.2d 895 (La.App. 1st Cir. 1966).
Having thus disposed of the issues presented, there is no need to consider Sugar Bowl's other specification of errors.
For these reasons, the judgment of the trial court is affirmed in part, reversed in part, and it is ordered and decreed that there be judgment in favor of appellant, Sugar Bowl Gas Corporation, and against appellees, Dynamic Exploration, Inc., Comprehensive Resources Corporation, John A. Gordon, Paul LaCoste, Robert W. Polchow, Jack V. Foster and R. L. Roundtree, dismissing appellees' claims at their costs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.