521 So.2d 1192 (1988)
Frank W. MATTHEWS, Plaintiff-Appellee,
v.
SUN EXPLORATION AND PRODUCTION COMPANY, Defendant-Appellant.
No. 19334-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
John W. Wilson, Shreveport, for defendant-appellant Sun Exploration & Production Co.
Stephen A. Glassell, Shreveport, for third party defendant-appellant, Patricia Laffitte Chamberlin.
D. Scott Brown, Mansfield, for plaintiff-appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
This case involves a dispute over the amount of royalty payments due from Sun Exploration & Production Co. to the plaintiff, Frank W. Matthews, under an oil, gas and mineral lease covering property located in DeSoto Parish. The case was submitted to the trial court on a joint stipulation of facts. The trial court found in favor of the plaintiff and ordered the defendant to pay *1193 the plaintiff double the royalties, interest and attorney fees. The defendant's third-party demand against another royalty interest owner, Patricia Laffitte Chamberlin, was dismissed. The defendant appealed and the plaintiff answered the appeal.

FACTS
The property covered by the lease was originally owned by Roy Albert Laffitte and his wife, Palma Coody Laffitte. Palma Laffitte died prior to July 16, 1964, but her succession was not opened. On July 16, 1964, Roy Laffitte and his children, James Albert Laffitte and Patricia Laffitte Chamberlin, executed an oil, gas and mineral lease on the property to in favor of W.C. Nabors. The Laffittes were to receive a one-eighth royalty interest (RI) on any production from the property. The royalties were divided between Roy Laffitte and his children to reflect that the children were to receive their deceased mother's portion of the royalty. The minerals were then owned in the following proportions: Roy Laffitte, 194/256; James Albert Laffitte, 31/256; Patricia Chamberlin Laffitte, 31/256.
On July 22, 1964, James Albert Laffitte conveyed his 31/256 portion of the royalty to his father, Roy Laffitte. At the same time, counter-letters were executed specifying that the conveyance was made only for the convenience of James Albert Laffitte and that Roy A. Laffitte was only holding the property for the convenience of his son, James Albert Laffitte. These counter-letters were not recorded in the public records of DeSoto Parish until February 18, 1976. Production was obtained on the property and, based upon the transactions referred to above, with the exception of the information contained in the counter-letters,.109863 RI was paid to Roy Laffitte and .015137 RI was paid to Patricia Laffitte Chamberlin.
On January 17, 1976, Roy Laffitte died. On January 20, 1976, his succession was opened and Patricia Laffitte Chamberlin was named executrix of the estate. On February 25, 1976, Mrs. Chamberlin filed a motion to send the heirs, being herself and her brother, into possession of a portion of the estate, including this piece of property. The motion stated that James had conveyed his royalty interest in the property to his father, but that a counter-letter was also executed which recognized that the conveyance was merely for the convenience of James Albert Laffitte. Copies of the counter-letter were attached to the motion. A partial judgment of possession was signed and filed on February 25, 1976. The judgment simply put the heirs into possession of an undivided one-half interest each in and to the property of the deceased.
Also on that date, the lawyer handling Roy Laffitte's succession wrote to Scurlock Oil Company, the company which was then receiving production from the lease, requesting that a new division order be issued and specifying that the order should reflect that Patricia and James were each entitled to one-half of the one-eighth royalty interest in the lease. Attached to the letter was a certified copy of the partial judgment of possession. No reference to the counter-letters was made in either the letter or the judgment.
At that time, Scurlock divided Roy Laffitte's interest in the lease equally between his two children, and also credited Mrs. Chamberlin with the interest she had previously acquired from her mother. Thereafter, Scurlock paid the royalty interest in the following proportions: Mrs. Chamberlin,.07006800; and James Albert Laffitte,.05493200. This division of the royalty interests clearly reflected that Mrs. Chamberlin's interest was greater than that of her brother.
On April 6, 1977, James Laffitte conveyed his interest in the property to Lawrence Rex Rambin.
By an act of assignment dated August 4, 1977, and effective on August 1, 1977, the defendant, Sun Oil, acquired numerous mineral leases from W.C. Nabors, including the Laffitte lease. On January 1, 1978, Sun took over from Scurlock Oil the obligation of making royalty payments on the property.
Sun prepared a new division order which went into effect January 1, 1978. This *1194 division order substituted Lawrence Rambin for James Albert Laffitte and reflected that Sun was to pay Lawrence Rambin the .05493200 RI previously paid to James Laffitte. Mrs. Chamberlin's interest remained at .07006800 RI.
On September 29, 1977, Lawrence Rambin conveyed his interest in the property to the plaintiff, Frank W. Matthews. Through error, the deed omitted reference to the mineral interest. A corrective instrument dated March 8, 1979, acknowledged that plaintiff received whatever mineral interest Rambin had acquired from James Laffitte.
A new division order was executed effective June 1, 1978, substituting the plaintiff for Rambin and specifying that the plaintiff was to receive the .05493200 RI previously paid to Rambin. This division order was executed by Rambin and the plaintiff. No reference was made in this document to Mrs. Chamberlin's royalty interest. Nevertheless, plaintiff's RI was clearly reflected as being less than one-half of the landowners' one-eighth royalty specified in the original lease. Royalties were paid in these proportions from June 1, 1978 until May 17, 1985.
Effective April 1, 1985, a portion of this property was unitized. Following this unitization, another division order was prepared and issued by Sun. The division order, which provided for royalty payments as before, was sent to plaintiff and to Mrs. Chamberlin. The division order was signed by Mrs. Chamberlin, but not by the plaintiff.
On July 8, 1985, the plaintiff made demand upon the defendant for a new division order reflecting that he and Mrs. Chamberlin each owned one-half of the one-eighth royalty interest (.0625 RI each) and requested an accounting, with interest, of the royalty payments erroneously made to Mrs. Chamberlin. In the alternative, the plaintiff sought cancellation of the lease.
On July 22, 1985, Sun responded to the plaintiff's letter, acknowledging its receipt and informing him that Sun would review the matter as soon as possible. Sun found that their records reflected that the royalty interest paid to the plaintiff was correct and informed the plaintiff of this conclusion in a letter dated July 29, 1985. However, Sun requested additional documentation of plaintiff's claim in order to resolve the matter.
The plaintiff's attorney told Sun that the plaintiff had instructed him not to release the title opinion on the property, but the attorney indicated that Sun should make an examination of the public records of DeSoto Parish, Louisiana. Sun hired a landman to check the records, but the counter-letters were not discovered.
On September 13, 1985, the plaintiff filed suit against Sun. The defendant, which obtained copies of the counter-letters only after suit was filed, answered, pleading the affirmative defense of estoppel. It also filed a third party demand against Mrs. Chamberlin, claiming that if any judgment was rendered against the defendant, then, under the theory of unjust enrichment, the defendant should be granted judgment against Mrs. Chamberlin in the same amount.
Peremptory exceptions were filed by the defendant, as well as by Mrs. Chamberlin, claiming that under LSA-C.C. Art. 3494, an action for an accounting of oil royalties is subject to three years liberative prescription and that the plaintiff was barred from recovering payments made more than three years prior to the date this suit was filed. The exception was referred to the merits. Mrs. Chamberlin also pled the affirmative defense of estoppel against the defendant.
The matter was presented to the trial court on a joint stipulation of the above facts. In the stipulation, Sun stated that accounting information received after suit was filed showed that an overpayment of $5,983.79 had been made to Mrs. Chamberlin from 1978 to February 1986. The parties also stipulated that the plaintiff would testify that he first became aware of Sun's error when he received the last division order which reflected the interest of all the parties. The parties stipulated that the defendant's attorney would testify that the overpayment would have been corrected had the plaintiff furnished the proper documentation. *1195 It was further stipulated that Mrs. Chamberlin would testify that she presumed that the attorney who handled her father's estate had informed the purchaser of production as to the correct ownership of the property, and that she presumed the figures on the division orders were correct when she signed them.
On January 30, 1987, the trial court rendered judgment in favor of the plaintiff and against Sun for double the amount of royalties due from June 1, 1978 until the date Sun began to pay the correct amount of .0625 RI due the plaintiff under the terms of the original lease, with legal interest on each sum from its respective due date until paid. The trial court found that the underpayment to plaintiff was caused by the defendant's error, negligence or inattention. The plaintiff was also granted $4,000 in attorney fees and the defendant was cast with costs. The defendant's third party demand against Mrs. Chamberlin was denied. Although not contained in the judgment, the trial court's written reasons indicated the exceptions of prescription filed by the defendant and the third party defendant were rejected. The court found that the running of prescription was suspended by the theory of contra non valentem. The trial court declined to cancel the lease. Sun's motion for new trial was overruled.
The defendant then filed a suspensive appeal and the plaintiff answered the appeal. During the pendency of the appeal, the plaintiff died. The First National Bank in Mansfield, Louisiana, the testamentary executor of the plaintiff's succession, was substituted as party plaintiff-appellee.
The defendant urges the following assignments of error: (1) the trial court erred in awarding the plaintiff damages equal to double the amount of the royalties due, together with interest and attorney fees; (2) the trial court erred in overruling the exception of prescription filed by the defendant and Mrs. Chamberlin; (3) the trial court erred in failing to grant the defendant's third party demand against Mrs. Chamberlin, which was based on the theory of unjust enrichment; and (4) the trial court erred in awarding an excessively high attorney fee.
The plaintiff filed an answer to the appeal, claiming the trial court erred in failing to award the plaintiff legal interest on the $4,000 attorney fee. The plaintiff contends the award should be increased by $2,500 to cover this appeal and that the defendant should be cast with the cost of this appeal. The issues raised in plaintiff's answer to the appeal were not argued in his brief.

REASONABLE CAUSE
The defendant contends that the trial court erred in awarding double the amount of royalties due, together with interest and attorney fees. We agree with the defendant, and accordingly we amend that portion of the trial court judgment to delete the award of double the royalties due and attorney fees.
LSA-R.S. 31:137, et seq., establishes the procedure to be followed by a mineral lessor seeking proper payment of royalties.
§ 137. Nonpayment of royalties; notice prerequisite to judicial demand
If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.
§ 138. Required response of lessee to notice
The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages.
§ 139. Effect of payment in response to notice
If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure *1196 to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.
§ 140. Effect of nonpayment in response to notice or failure to state cause therefor
If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion.
LSA-R.S. 31:140 provides the trial court with great discretion in awarding damages. It does not mandate that any award be given in excess of the royalties due. Wegman v. Central Transmission, Inc., 499 So.2d 436 (La.App. 2d Cir.1986), writ denied 503 So.2d 478 (La.1987).
In response to the plaintiff's demand letter of July 8, 1985, the defendant wrote to him on July 22, 1985, to acknowledge his letter, and again on July 29, 1985, to inform him that Sun's files indicated that the royalty interest paid to him was correct. The difference in the plaintiff's and Mrs. Chamberlin's royalty interest was attributed to her previous ownership of an undivided 31/256 royalty interest prior to her inheritance of one-half of her father's succession.
Under the circumstances, we find that the defendant informed the plaintiff of a reasonable cause for nonpayment of the additional royalty interest as required by LSA-R.S. 31:140. The original documentation sent to Sun's predecessor in the lease, Scurlock Oil Company, by the attorney handling Mr. Lafitte's succession, was not completely clear, and was subject to interpretation. The attorney's letter stated that Mrs. Chamberlin and her brother were each to receive one-half of the one-eighth interest in the mineral lease. Attached to the letter was a copy of the partial judgment of possession providing that the siblings were each entitled to one-half interest in the property at issue. Scurlock was not advised of the counter-letters. Therefore, this information, when coupled with the previous "conveyance" from son to father, without the benefit of knowledge of the counter-letters and the information contained therein, reasonably gave rise to Scurlock's interpretation. Scurlock obviously understood this information to mean that the siblings divided their father's estate equally, and that the interest "acquired" by their father from his son was part of that estate. When Sun acquired several hundred of Nabor's leases, and received from Spurlock a printout of ownership based upon the previous division orders and the manner Spurlock was paying royalties, Sun unknowingly perpetuated the error.
During the course of their correspondence, the plaintiff became aware of the defendant's lack of knowledge of the existence of the counter-letters. Nevertheless, the plaintiff specifically told his attorney not to divulge any information to the defendant. Had these counter-letters been supplied to the defendant, the matter would have probably been resolved without litigation.[1]
*1197 Upon receiving the lessor's notice and demands, the defendant took proper steps to investigate the situation. Within thirty days of the receipt of notice, the defendant informed the plaintiff of the manner in which the royalties were calculated and the reasons for the apportionment. Plaintiff knew that failure to consider the counter-letters was responsible for defendant's erroneous calculations and plaintiff knew or must have known that Sun simply did not know of their existence. With this knowledge, plaintiff refused to provide this information to defendant, and instead, filed suit.
Under all the circumstances of this case, we do not think that the defendant acted unreasonably in responding to the plaintiff's demands or in attempting to resolve the discrepancy and to pay plaintiff the amount of royalty to which he was entitled. The defendant always acted in good faith and the assessment of penalties and attorney fees was not justified. Having found that the reasons given by the lessee were reasonable, the plaintiff is limited to an award of interest on the royalties owed, computed from the date due. Arceneaux v. Hawkins, 376 So.2d 362 (La.App. 3rd Cir.1979).
Consequently, we amend the trial court judgment to delete the award of double the amount of royalties, as well as the award of attorney fees. The plaintiff is entitled to recover the amount of royalties owed and interest on that sum, computed from the due date of each payment.

PRESCRIPTION
Both the defendant and Mrs. Chamberlin argue that the trial court erred in failing to sustain their pleas of prescription. The trial court found the doctrine of "contra non valentum agere nulla currit praescriptio" applicable to the facts of this case, and allowed the plaintiff to recover all of the accrued royalties. In this regard, we believe the trial court erred.
The claim for royalties in arrearage under an oil and gas lease is likened to the payment of rent, and prescribes in three years. Former LSA-C.C. Art. 3538; current LSA-C.C. Art. 3494; O'Neal v. Union Producing Company, 153 F.2d 157 (5th Cir.1946), cert. denied 329 U.S. 715, 67 S.Ct. 46, 91 L.Ed. 621 (1946); Board of Com'rs of Caddo Levee Dist. v. Pure Oil Company, 167 La. 801, 120 So. 373 (1929). Thus, the plaintiff would ordinarily be barred from recovering any royalties which accrued before September 13, 1982.
The Louisiana Supreme Court discussed the doctrine of "contra non valentum" in the recent case of Plaquemines Parish Commission Counsel v. Delta Development Company, Inc., 502 So.2d 1034 (La.1987). In the early jurisprudence, the courts held that the doctrine applied to prevent the running of liberative prescription in three factual situations. They were: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. A fourth situation where "contra non valentum" applies to prevent the running of prescription has been recognized in modern jurisprudence. This situation occurs where the cause of action is not known or reasonably knowable by the plaintiff, even though the plaintiff's ignorance is not induced by the defendant. However, the plaintiff's claim is not excepted from the running of prescription if his ignorance is attributable to his own willfulness or neglect. The plaintiff will be deemed to know that which he could have learned by reasonable diligence. Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979).
In the first three fact situations referred to above, a plaintiff's cause of action has accrued, but the plaintiff is prevented from enforcing it by some reason external to his own willsuch as the conduct of the *1198 defendant. In the fourth situation, the cause of action does not mature until it is known or is at least knowable. The equitable nature of the circumstances in each case determines whether "contra non valentum" is applicable. Nathan v. Carter, 372 So.2d 560 (La.1979).
In the instant case, we find no act committed by the defendant which prevented the plaintiff from availing himself of his cause of action, nor do we find that plaintiff's cause of action could not have been discovered by him through the exercise of reasonable diligence. The division order of June 1, 1978, which substituted the plaintiff for Rambin, specified Rambin's royalty interest. Although the other ownership interests were not set forth in this division order, the omission was not a device by which the defendant sought to deceive the plaintiff. Instead, only Rambin's interest was listed because his was the only interest affected by the transfer. Importantly, the division order of June 1, 1978 specifically provided that plaintiff was receiving.05493200, which, on its face, is less than .0625, or one-half of the one-eighth royalty interest provided in the lease. Therefore, when plaintiff executed the division order on June 1, 1978 he knew he was receiving less than one-half of the landowner's one-eighth royalty and he has continued with that knowledge from that time forward. Plaintiff knew or should have known of his mineral ownership when he signed the division order. Further, it is important to note that Sun was not attempting to deceive the plaintiff or to otherwise intentionally withhold the payment of any sums owed to a royalty owner. Sun was obligated to pay a 1/8 royalty interest, and it always promptly paid that amount. Sun had nothing to gain by making an incorrect apportionment of payments to the royalty owners.
We also point out that Sun's error was the result of erroneous title information, the kind of information which was readily available to the plaintiff. This was not a situation where erroneous royalty payments was caused by faulty technical information (accounting errors, quantity of runs and production from the lease, etc.) which is more likely to be in the possession of the lessee, rather than the lessor.
Therefore, equity, justice and the circumstances of this case do not justify a deviation from the ordinary prescriptive rule. Thus, we reverse the trial court's decision on the issue of prescription, and hereby sustain the pleas of three years liberative prescription filed by the defendant and Mrs. Chamberlin.

UNJUST ENRICHMENT
The defendant contends that the trial court erred in denying its third party demand against Mrs. Chamberlin. The defendant argues that under the doctrine of "unjust enrichment," Mrs. Chamberlin should not be allowed to retain the proceeds erroneously paid to her. Mrs. Chamberlin relies upon the principal of equitable estoppel.
The Civil Code articles applicable to the facts before us address the "payment of a thing not due" and are embodied in LSA-C.C. Art. 2301 and 2302.
LSA-C.C. Art. 2301 provides:
He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
LSA-C.C. Art. 2302 states:
He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.
Mrs. Chamberlin was overpaid by defendant a total sum of $5,983.79. The trial court found in its written opinion that Mrs. Chamberlin had no reason to doubt the accuracy of Sun's division orders. The trial court also indicated that due to Sun's negligence, it would be unfair to make Mrs. Chamberlin repay the funds, particularly since there was no evidence in the record that Mrs. Chamberlin still had the funds to repay the defendant.
We find that the trial court erred in finding that Mrs. Chamberlin was not required to repay the money mistakenly overpaid to her by the defendant. As previously *1199 stated, we believe the defendant's actions amounted to reasonable error under the facts of this case. We further note that Mrs. Chamberlin was not only the executrix of her father's succession, she was also privy to the counter-letters at all times. Additionally, she signed the division order effective January 1, 1978, which clearly showed that her interest was greater than that of Rambin, who obtained his interest from her brother. A cursory examination of the division order should have alerted Mrs. Chamberlin to the existence of a problem, considering her knowledge of the counter-letters and the one-half division of property between her brother and herself. Consequently, we cannot find her totally free of fault.
Recent jurisprudence has properly interpreted the Code Articles to provide that negligence per se by a payor is not a bar to recovery for the payment of a thing not due. Dynamic Exploration, Inc. v. Sugar Bowl Gas Corp., 367 So.2d 18 (La.App. 1st Cir.1978), writ denied 368 So.2d 142 (La. 1979); Pioneer Bank & Trust Company v. Dean's Copy Products, Inc., 441 So.2d 1234 (La.App. 2d Cir.1983); Williams v. Bank of Louisiana in New Orleans, 454 So.2d 1138 (La.App. 4th Cir.1984), writ denied 460 So.2d 611 (La.1984).
We believe the defendant's error in overpaying Mrs. Chamberlin amounted to an ordinary or "honest" mistake as contemplated by the Civil Code Articles. Consequently, Sun's error in making the overpayment does not bar its recovery of these funds.
Mrs. Chamberlin argues that equitable estoppel operates to prevent the defendant from recovering. The three elements of estoppel are: (1) a representation by conduct or words; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. There is no evidence in the record that Mrs. Chamberlin changed her position to her detriment or that she has been placed in a disadvantaged position because of her acceptance of the overpayment. All that is shown in the record is that Mrs. Chamberlin received money to which she was not entitled, and of which she had the temporary use.
Thus, we determine that the trial court erred in dismissing the defendant's third party demand against Mrs. Chamberlin. That portion of the trial court judgment is reversed and set aside.
The record reflects that after September 3, 1982, Mrs. Chamberlin received overpayments totalling $2,879.50. Therefore, judgment will be rendered against Mrs. Chamberlin, ordering her to repay that amount to Sun, plus interest at the legal rate from date of judicial demand, until paid.

CONCLUSION
For the foregoing reasons, that portion of the judgment awarding the plaintiff double the amount of royalties due from January 1, 1978 until the date Sun began to pay the correct amount, with legal interest on each sum from its respective due date until paid, and attorney fees, is amended. Judgment is hereby entered in favor of plaintiff, and against defendant, Sun Exploration & Production Co. in the full sum and amount of $2,879.50, representing the amount of royalties owed since September 13, 1982, with legal interest thereon computed from the respective due date of each royalty payment comprising that sum. The pleas of prescription filed by the defendant and Mrs. Chamberlin are sustained.
That portion of the judgment which dismisses the defendant's third party demand against Mrs. Chamberlin is reversed and set aside and judgment is hereby rendered in favor of Sun Exploration & Production Co. and against Mrs. Patricia Laffitte Chamberlin, the third party defendant, in the full sum and amount of $2,879.50, with legal interest thereon from the date of judicial demand, until paid. Costs are assessed to plaintiff-appellee.
AMENDED IN PART; REVERSED IN PART, AND RENDERED.
NOTES
[1] We note that paragraph 10 of the original lease provides that no change in the ownership of the royalties shall be binding upon the lessee until the person acquiring the interest has furnished the lessee with a certified copy of the instrument constituting his chain of title from the original lessor. Similar lease provisions have been construed in the jurisprudence as relieving the lessee of the unreasonable burden of constantly checking the public records for changes in ownership which may have occurred. Garelick v. Southwest Gas Producing Company, 129 So.2d 520 (La.App. 2d Cir.1961); Hibbert v. Mudd, 294 So.2d 518 (La.1974). Certified copies of the counter-letters were not furnished to Sun by the plaintiff in accordance with the lease provision even though the plaintiff certainly knew they were at the root of the discrepancies in ownership of the royalty interests.