552 So.2d 440 (1989)
Lemar GOODMAN
v.
DIXIE MACHINE WELDING & METAL WORKS, INC., et al.
Nos. 89-C-1430, 89-C-1445 and 89-C-1447.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1989.
Writ Denied December 8, 1989.
Craig R. Nelson, Al M. Thompson, Jr., Sarah A. Lohman, Hulse, Nelson & Wanek, New Orleans, for relator, E.D. Bullard Co.
James L. Selman, II, Gordon P. Gates, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for relator, Mine Safety Appliances Co., et al.
*441 Thomas E. Loehn, Samuel M. Rosamond, III, Boggs, Loehn & Rodrigue, New Orleans, for relator, Commercial Union.
Gary P. West, Rodney P. Vincent, Gertler, Gertler & Vincent, New Orleans, for respondents.
Before BARRY, KLEES, BYRNES, LOBRANO and BECKER, JJ.
BARRY, Judge.
On October 14, 1983 Lemar Goodman sued E.D. Bullard Company, Mine Safety Appliances Company, Commercial Union Insurance Company, Employers Commercial Union Insurance Company and Columbia Casualty Company (relators herein) alleging their fault in causing his lung disease. Various allegations of breach of warranty, defective equipment and negligent acts are asserted to support plaintiff's claim.
Relators each filed an exception of prescription, arguing that plaintiff had constructive notice of his injuries in early 1976, and actual notice of his condition as late as September 16, 1982.
The trial court overruled relators' exception of prescription and in oral reasons, concluded that plaintiff did not receive notice that his condition was related to his work until October 29, 1982 when his attorney, David Gertler, received a letter from Dr. Brown which confirmed plaintiff's condition as work related.
The record consists of plaintiff's deposition, the deposition of Dr. Morton Brown, the testimony of attorney David Gertler and various medical exhibits.
Plaintiff was employed by Dixie Machine Welding and Metal Works, Inc. until the beginning of 1982. From the early seventies until a year or so prior to retirement he worked as a sandblaster. Prior to that time he was a laborer, principally cleaning and replacing boilers on ships.
In 1976, on the recommendation of his employer's physician, plaintiff sought medical attention from the Veterans Administration Hospital because he was experiencing shortness of breath. The V.A. medical records indicate plaintiff was suffering from emphysema and there was a potential for silicosis, but further testing was necessary. The records also indicate plaintiff had a long history of smoking (but not inhaling) cigars.
Although the evidence is not clear as to the exact date, sometime thereafter plaintiff's employer removed him from sandblasting and assigned him to the tool room. Plaintiff testified he was never told the reason for that change.
Because his condition worsened, in September of 1982 he made an appointment to see David Gertler, an attorney. Plaintiff was apparently referred to Mr. Gertler by other sandblasters. Plaintiff complained of shortness of breath and told Mr. Gertler that "he felt that he might have a case because he was a sandblaster." Mr. Gertler advised him that he could not represent him because he did not have an actionable claim merely based on shortness of breath. Mr. Gertler stated he would attempt to determine if he had a claim and plaintiff was free to hire any attorney he wished. Mr. Gertler suggested that plaintiff see a pulmonary specialist and gave him the names of several doctors. Plaintiff chose Dr. Morton Brown, and Mr. Gertler made the appointment.
Dr. Brown testified he examined plaintiff on September 16, 1982 pursuant to the appointment arranged by Mr. Gertler. As a result of that examination Dr. Brown dictated and sent the following letter to Mr. Gertler the same day:
September 16, 1982
David Gertler
Attorney at Law
1001 Howard Avenue
New Orleans, La. 70113
RE: Mr. Lemar Goodman
Dear Sir:
As per your request, I am sending you the initial x-ray report on Mr. Lemar Goodman. The x-ray reveals evidence of a diffused interstitial reaction throughout the entire lung fields. This is mostly seen in the lower 2/3 of the lung field. There is a fine nodular and interstitial reaction compatiable [sic] with pneumoconosis *442 of the hilar area, but no definate [sic] nodes are seen. In view of this patients [sic] occupation as a sandblaster, this is compatiable [sic] with silicosis.
The patient should have further studies to evaluate the degree of disability associated with these findings. He should have a Gallium Scan and a complete evaluation for associated Collagen Disease, that may be present. Further studies will be done on his return.
 Sincerely yours,
 Morton Brown, M.D.
MB/at
Dictated but not read.
Mr. Gertler received the letter and met with plaintiff on October 6th or 7th. As to that meeting Mr. Gertler testified:
He [plaintiff] came to the office. I read him a report that Dr. Brown had sent me and I told him that it is not diagnostic in any way nor is it compatible necessarily with any disease that I could represent him on, that it could be several diseases, some of which are not actionable, and that under the circumstances until it is determined actionable I could not represent him.
On cross-examination Mr. Gertler denied that he read the letter to plaintiff, but merely told him that he had Dr. Brown's report and based on that report "you do not have a cause of action." He denied that he agreed to represent plaintiff.
As a result of the October conference, Mr. Gertler made another appointment for plaintiff to see Dr. Brown. On October 15, 1982 plaintiff went to West Jefferson Hospital for further tests. On October 29, Dr. Brown sent Mr. Gertler a report wherein he concluded:
[I]t is my opinion, that this patient is suffering from diffuse silicosis with severe respiratory insufficiency. In addition, he has abnormalities of his immunological system that may evolve into a very serious neoplastic condition of the bone marrow. He also has evidence of cardiac abnormalities that may be related to immunological disturbance. This disturbance is cuased [sic] by silia dust exposure. He is, in my opinion, disabled from this condition.
When plaintiff saw Mr. Gertler on November 15, 1982 he was advised that he had an actionable disease. At that time plaintiff signed an employment contract with the Gertler law firm. Suit was filed October 14, 1983.
La.C.C. Art. 3492 provides a one year prescriptive period for delictual actions which runs "from the day injury or damage is sustained." The doctrine of contra non valentum provides an exception "[w]here the cause of action is not known or reasonably knowable by the plaintiff, even though plaintiff's ignorance was not induced by the defendant." Moran v. Volkswagen of America, 519 So.2d 871 (La.App. 4th Cir. 1988).
Prescription does not run against a person who is ignorant of facts upon which his cause of action is based if such ignorance is not willful, negligent or unreasonable. Griffin v. Kinberger, 507 So.2d 821 (La.1987) citing Young v. Clement, 367 So.2d 828 (La.1979). Prescription does not begin to run until the plaintiff has knowledge of both the tort and the resulting damages, or, until the cause of action has manifested itself with sufficient certainty to be capable of proof in a court of law. Bellamy v. Janssen, 477 So.2d 928, 930 (La.App. 4th Cir.1985). A mere apprehension that something is wrong is not sufficient to start the running of prescription unless the plaintiff either knows or should know by the exercise of reasonable diligence that there was a reasonable possibility that his damages may have been caused by another. Cordova v. Hartford Acc. & Indem. Co., 387 So.2d 574 (La.1980).
In Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987) the Supreme Court corrected and clarified previous misinterpretations of its decision in Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970). Specifically, Jordan redefined the notice necessary to start the prescriptive toll:
The language in Cartwright ... is an incomplete definition of the kind of notice that will start the running of prescription.

*443 Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. 509 So.2d at 423.
We are satisfied the trial court was correct by concluding there was insufficient notice to begin prescription until November 15, 1982 when plaintiff was advised of Dr. Brown's October 29, 1982 letter and advised by Mr. Gertler to file suit. It was on that date that plaintiff was first aware that his physical condition could be the basis for a lawsuit. At that time he signed an employment contract with Mr. Gertler.
We consider plaintiff's actions reasonable considering Mr. Gertler's advice to sue did not occur until November 15, 1982.
Though plaintiff was aware that he had lung problems as early as 1976, there is insufficient evidence to suggest he had knowledge it was work related at that time. The record is unclear as to whether plaintiff knew the exact contents of the September letter. Gertler first testified he read the letter to plaintiff, then stated he did not. In any case, the September letter, like the earlier medical records, suggests that further testing was required. Further testing was indeed done and those test results formed the basis of Gertler's advice to the plaintiff that plaintiff did have a cause of action.
WRITS DENIED.
LOBRANO, J., dissents with written reasons.
BECKER, J., dissents and adopts LOBRANO, J., reasons.
LOBRANO, Judge, dissenting.
Constructive knowledge sufficient to commence prescription is more than a mere apprehension that something is wrong. Cordova v. Hartford Accident and Indemnity Co., 387 So.2d 574 (La.1980). The plaintiff who is ignorant of the facts which support his cause of action will not have his cause prescribed as long as his ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La. 1979). In Griffin v. Kinberger, 507 So.2d 821 (La.1987), the Supreme Court held that the plaintiff was first put on notice that she had a malpractice claim when she read a newspaper article about a child's blindness resulting from lack of oxygen at birth. In Clofer v. Celotex Corp., 528 So.2d 1074 (La.App. 5th Cir.1988) the court held that the initial medical report sent to plaintiff's attorney which stated, in part, that plaintiff should have a complete examination to determine the degree of lung damage sustained was sufficient notice to start prescriptive running. "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), at p. 423.
Based on these guidelines, I am satisfied that plaintiff had sufficient notice to start the prescriptive toll, at the latest, on October 6th or 7th, 1982 when he met with Gertler after his examination by Dr. Brown. As early as 1976, plaintiff was aware that he had lung problems, although the evidence is insufficient to suggest his belief they were work related. However, plaintiff subsequently obtained sufficient information to justify the services of an attorney. He then had a medical examination by Dr. Brown wherein he gained additional information. These facts coupled with the subsequent visit to Gertler's office after Gertler received Brown's September 19th letter convince me that plaintiff had sufficient knowledge to start the running of prescription. If the newspaper article in Griffin, supra is sufficient, then certainly the facts of this case are sufficient.
I would maintain the exception of prescription.