**Elizabeth Diggs EDMUNDSON, Edmundson Brothers Partnership, and Apex Enterprises, A Louisiana Partnership in Commendam, Plaintiffs–Appellants,**

v.

**AMOCO PRODUCTION COMPANY, Defendant–Appellee.**

No. 90–3234.

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1991.

---

1. The district court did not address this issue.

Bruce S. Kingsdorf, Carl W. Cleveland, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, La., for plaintiffs-appellants.

Frank J. Peragine, Thomas R. Blum, Charles C. Coffee, Simon, Peragine, Smith & Redfearn, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

The plaintiffs/appellants, owners of mineral interests in land leased to defendant/appellee, Amoco, originally brought this action against Amoco for alleged underpayment of royalty amounts. Amoco argued that the three-year prescription period allowed for such actions under Louisiana Civil Code article 3494 had expired and, therefore, filed a motion to dismiss the complaint. The appellants replied that the doctrine of *contra non valentem* had delayed the running of the prescription period and that they had filed their action within the delayed period. Treating Amoco's motion to dismiss as a motion for summary judgment, the district court rejected appellants' argument and granted summary judgment in favor of Amoco. Appellants filed a timely appeal. Finding no error in the district court's determination, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

The appellants in this case, collectively, "the Edmundsons," own mineral royalty interests in the Morganza Field in Pointe Coupee Parish, Louisiana. Amoco Production Company ("Amoco"), as lessee of the Edmundsons and other owners of the Morganza Field, manages the gas recovery operations on the property. In 1981, Amoco

entered into a natural gas purchase and sale contract with Columbia Gas Transmission Corporation ("Columbia") pursuant to which Amoco marketed the gas it produced from the Morganza Field. Some time after the contract was signed, Columbia began experiencing financial difficulties and became unable to fulfill its contractual obligations to Amoco. In an attempt to enforce the contract, Amoco sued Columbia in Civil District Court for Orleans Parish, Louisiana in 1985. The lawsuit was settled on July 1, 1985, and Amoco notified the Edmundsons as well as other royalty owners of certain terms of the settlement agreement by a letter dated November 12, 1985. Suspecting that Amoco might not be providing them with equitable shares of the settlement, the Edmundsons contacted a representative of the company, Scott Thompson, to request a copy of the settlement document. Neither the briefs nor the record on appeal expand on Thompson's responsibilities within Amoco other than to say that he was a "representative" of the oil company. The Edmundsons claim that Thompson informed them that the settlement agreement was considered confidential and, therefore, not available for distribution. The Edmundsons further claim that Thompson made assurances that all royalty owners would receive their fair share of the settlement proceeds. The Edmundsons apparently relied on these assurances and took no further action to protect their interests. The Edmundsons, however, did understand that their royalty amounts had been reduced as a result of the agreement. On May 9, 1986, the Edmundsons requested that Amoco confirm the royalty amounts to which they were entitled under the agreement. The Edmundsons explained that their bank had requested the confirmation because of "the dramatic reduction in [their] monthly royalty checks." *See Edmundson Letter* to Amoco (May 9, 1986), at 53.

In November of 1988, the Edmundsons became aware of a lawsuit filed by more than one hundred other royalty owners against Amoco for royalty underpayments made in association with the Morganza Field settlement. The Edmundsons subse-

quently filed their own lawsuit against Amoco in November of 1989.

In district court, Amoco argued that the claim for underpaid royalties was barred by a three-year prescription period, encompassing actions for "underpayments ... of royalties from the production of minerals." La.Civ.Code Ann. art. 3494(5) (West Supp. 1990). Amoco argued that the prescription period should have begun when the Edmundsons received the November 1985 letter notifying them of the settlement agreement. The Edmundsons responded that the letter did not contain the critical information needed to bring suit (e.g., that Columbia was to pay Amoco certain "take-or-pay" amounts that would not be shared with royalty owners, the total amount in dispute, or the existence of a royalty owner indemnification provision). Additionally, the Edmundsons claimed that Amoco prevented them from gaining such knowledge by refusing to allow them to review the settlement agreement. The Edmundsons allege that these facts should have forestalled the running of the prescription period under the Louisiana doctrine of *contra non valentem*. Among other things, the doctrine would halt the running of the prescription period if the defendant prevents the plaintiff from availing himself of his cause of action or if the action was not known or reasonably knowable by the plaintiff. *See Afco Steel, Inc. v. Tobi Engineering, Inc.*, 893 F.2d 92, 93 (5th Cir. 1990); *Matthews v. Sun Exploration & Production Co.*, 521 So.2d 1192, 1197 (La. App. 2d Cir.1988).

The Edmundsons failed to pursue other avenues of discovery that could have led them to the information that they claim was necessary to recognize the existence of a cause of action against Amoco. Among other things, the letter that Amoco sent to the Edmundsons and the other royalty owners in November of 1985 included the style, suit number, and forum of the settlement agreement with Columbia. Some of the information which the Edmundsons claim was lacking from Amoco's November 1985 notice could have been obtained from these court records. Amoco also submitted

an affidavit from one of their attorneys stating that the company had affirmatively responded to requests by other royalty owner groups requesting copies of the settlement agreement. *See Affidavit of Jackson M. Cooley*, Record at 17–18. More than one hundred other royalty owners of the Morganza field pursued these or other methods of discovery and ultimately filed timely suits associated with this same settlement agreement.

Amoco filed a motion to dismiss the Edmundsons' complaint based on the expiration of the three-year prescription period set out in article 3494(5) of the Louisiana Civil Code. The district court treated the motion as a motion for summary judgment and ruled in favor of Amoco. The court found that the Edmundsons had not met their burden of establishing interruption or suspension of the three-year prescription period, explaining that the Edmundsons "had or should have had sufficient information about the effect of the settlement agreement on their royalty interests so as to cause prescription to commence." *Edmundson v. Amoco*, No. 89–5114 (E.D.La. Mar. 6, 1990) (Order and Reasons at 5).

Appellants filed a timely appeal and urge us to find that the district court erred in finding that the prescription period for filing suit had run.

## DISCUSSION

*I. Standard of Review.*

■ In reviewing the district court's decision to grant summary judgment, we are governed by the same standard as that governing the district court's initial determination under Federal Rule of Civil Procedure 56(c). *See Mozeke v. Int'l Paper Co.*, 856 F.2d 722, 724 (5th Cir.1988). Therefore, we may affirm the summary judgment ruling if we find that the Edmundsons have failed to present sufficient evidence to create a genuine issue as to whether prescription has been suspended under the *contra non valentem* doctrine.

*II. Doctrine of Contra Non Valentem.*

■ The Louisiana doctrine of *contra non valentem agere nulla currit praes-*

*criptio,* literally means that "no prescription runs against a person unable to bring an action." *Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902, 907 (5th Cir.1985). The doctrine focuses on those factors, not within the control of plaintiffs, that prevent plaintiffs from bringing an action. *See Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 502 So.2d 1034, 1056 (La.1987); *Corsey v. State Dept. of Corrections*, 375 So.2d 1319, 1322, 1322–23 (La. 1979). The doctrine would halt the running of a prescription period in *four instances:*

(1) where some legal cause prevents the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) where some condition coupled with the contract or connected with the proceedings prevents the creditor from suing or acting;

(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

(4) where the cause of action is not known or reasonably knowable by the plaintiff and plaintiff's ignorance is not attributable to his own willfulness or neglect.

*See Matthews v. Sun Exploration & Production Co.*, 521 So.2d 1192, 1197 (La.App. 2d Cir.1988).

In the case before us, the Edmundsons argue that the prescription period for bringing their lawsuit should have been suspended under the third and fourth categories of the *contra non valentem* doctrine. The Edmundsons have the burden of establishing the facts that would support these arguments. *See Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902, 908–09 (5th Cir.1985). We consider each of the arguments set forth by the Edmundsons below.

### A. Prevention by the Debtor

The Edmundsons contend that Amoco's own actions prevented them from filing their lawsuit within the prescribed limitations period. Specifically, the Edmundsons

point to an Amoco representative's refusal to provide them with a copy of the Morganza Field settlement agreement and the representative's assurances that each of the royalty owners would be treated fairly.

In analyzing whether a defendant has prevented a plaintiff from discovering his cause of action, Louisiana courts have consistently looked for evidence of bad faith. In *Matthews,* for instance, the court found it significant that the "[debtor] was not attempting to deceive the plaintiff or to otherwise intentionally withhold the payment of any sums owed to a royalty owner." *Matthews,* 521 So.2d at 1198. The court, therefore, refused to apply the *contra non valentem* doctrine. *See also Whitnell v. Menville,* 540 So.2d 304, 308 (La.1989) (negligence on part of defendant was not enough to trigger *contra non valentem* doctrine but intentional concealment would have been); *Plaquemines,* 502 So.2d at 1038 (applying the *contra non valentem* doctrine in a case where "affirmative acts of concealment, misrepresentation ... and fraudulent conduct" were demonstrated); *Nathan v. Carter,* 372 So.2d 560, 563 (La.1979) (applying the *contra non valentem* doctrine where debtor had committed certain "acts of fraud and misrepresentation ... designed to hinder, impede or prevent plaintiffs from asserting their cause of action"); *Rajnowski v. St. Patrick's Hosp.,* 551 So.2d 806, 808 (La. App. 3rd Cir.1989), *aff'd,* 564 So.2d 671 (La. Apr. 30, 1990), *reh'g denied* (May 24, 1990) ("To trigger the third category of the doctrine, a plaintiff must establish that the defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation or other ill practices) which tend to hinder, impede or prevent the plaintiff from asserting his cause of action."). This analysis is consistent with the fact that no fiduciary duty exists between a lessor and a lessee in Louisiana law. *See* La.Rev.Stat.Ann. § 31:122 (West 1989) ("Mineral Code"). Under article 122 of the Mineral Code a lessee is simply obligated to act as a "reasonably prudent operator." Even the Edmundsons admit that this article simply obligates Amoco "not to intentionally mis-

lead a royalty owner/lessor." *Edmundson Reply Brief* at 2.

The Edmundsons have failed to present any evidence indicating that Amoco intentionally sought to hinder, impede or prevent royalty owners from obtaining a copy of the settlement agreement. A statement from a single Amoco representative that the agreement was unavailable for distribution and that royalty owners would be treated fairly does not approach the necessary showing. Since the actions allegedly taken by Amoco did not prevent the Edmundsons from seeking alternatives in pursuing their cause of action, the district court was correct in finding that the three-year prescription period was not suspended by this strand of the *contra non valentem* doctrine.

**B. Where Cause of Action is Known or Reasonably Knowable.**

The Edmundsons next claim that the prescription period on their cause of action should have been suspended, because they did not know, nor was it reasonably knowable, that they had a cause of action against Amoco until November 1988 when they became aware of claims by other royalty owners. Reliance on this argument, belies the facts of the case.

While "prescription should not be used to force a person who believes he may have been damaged in some way to rush to file a suit against all parties who might have caused that damage," neither should it be used to excuse parties from using reasonable diligence in acquiring the information which would justify such a suit. *Jordan v. Employee Transfer Corp.,* 509 So.2d 420, 423 (La.1987); *see also Matthews v. Sun Exploration & Production,* 521 So.2d 1192, 1197 (La.1988) ("The plaintiff will be deemed to know that which he could have learned by reasonable diligence."); *Griffin v. Kinberger,* 507 So.2d 821, 823–24 (La. 1987) ("prescription does not run as long as it was reasonable for the victim not to recognize [that she had a cause of action]"); *Goodman v. Dixie Mach. Welding & Metal Works, Inc.,* 552 So.2d 440, 442 (La.App. 4th Cir.), *writ denied,* 553 So.2d

860 (La.1989) ("A mere apprehension that something is wrong is not sufficient to start the running of prescription unless the plaintiff either knows or should know by the exercise of reasonable diligence that there was a reasonable possibility that his damages may have been caused by another.").

There is no question that the November 1985 letter from Amoco alerted the Edmundsons to the fact that their interests might be affected by the Amoco–Columbia settlement agreement. The Edmundsons contacted Amoco shortly after receipt of the letter to request a copy of the agreement, and, by a letter dated May 9, 1986, the Edmundsons further requested that Amoco confirm the royalty amounts to which they were entitled under the agreement.

As already noted, the information sought by the Edmundsons was available from sources other than the single Amoco representative with whom they spoke. The Edmundsons could have gotten access to the court documents alluded to in Amoco's initial notice, they could have contacted Amoco's legal department as other royalty owners did, or they could have spoken directly with other royalty owners who managed to file timely suits. In short, the information was reasonably knowable. The only thing which prevented the Edmundsons from acquiring such information was their own neglect and their failure to exercise reasonable diligence.

Because the information sought by the Edmundsons was reasonably knowable from sources other than the single Amoco representative, and because the representative did not prevent the Edmundsons from pursuing these additional sources, we find that the district court was correct in finding that the three-year prescription period was not suspended by the *contra non valentem* doctrine.

### III. *Effect of Installment Payments on Prescription.*

■ The Edmundsons also attempt to avoid the three-year limitations period by suggesting that prescription on a cause of action, which is related to a settlement agreement or contract, runs in a piecemeal fashion in relation to the percentage completion of the contract or settlement at any one point in time. The Edmundsons begin by pointing out that the Amoco–Columbia agreement calls for settlement funds to be paid in three installments. Twenty percent was to be paid on December 1, 1984, forty percent on December 1, 1986, and the final forty percent on December 1, 1987. The Edmundsons do not claim that they did not receive their fair share of these particular payments. Their cause of action is instead based on "other benefits" that they allege Amoco received but did not share with them. *See Edmundson Complaint* ¶¶ 8–10, Record at 131–32. The Edmundsons, however, attempt to tie the limitations period for their cause of action to the separate and unrelated installment payments. Applying this analysis, the Edmundsons conclude that only twenty percent of their claim should have prescribed, because Amoco and Colombia had only completed twenty percent of their contract by the time the Edmundsons finally brought suit. The Edmundsons cite no case law to support this novel theory, and the controlling statute does not support such an analysis.

Louisiana Civil Code, art. 3495, states that the three-year prescription period applicable to actions for recovery of royalty underpayments begins to run "from the day a cause of action arises" or from the day in which the "creditor could institute his demand." La.Civ.Code Ann. art. 3495 (Comments) (West Supp.1990). The Edmundsons could have brought suit to secure a right to, and demand, payment for any additional "benefits" they felt they were entitled to under the settlement immediately after having received the November 1985 notice from Amoco. Instead, the Edmundsons brought suit in 1989, well after the expiration of the three-year prescription period. The rate at which Amoco and Colombia completed their agreement had no effect on the running of the prescription period for the Edmundsons' cause of action against Amoco. The district court was correct in dismissing this argument.

Since the prescription period on the Edmundsons cause of action had expired by the time they eventually brought suit, we find that the district court was correct in granting summary judgment for Amoco.

AFFIRMED.