551 So.2d 806 (1989)
Richard and Nancy RAJNOWSKI, Individually and as Parents and Natural Tutors and as the Administrator of the Estate of Their Minor Child, Richard Rajnowski, Jr., Plaintiffs-Appellants,
v.
ST. PATRICK'S HOSPITAL OF LAKE CHARLES, Louisiana and Dr. Floyd Guidry, Defendant-Appellee.
No. 88-769.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Writ Granted January 19, 1990.
Lewis & Kullman, Lawrence S. Kullman, New Orleans, for plaintiffs-appellants.
Pugh & Boudreaux, Charles J. Boudreaux, Sr., Lafayette, for defendant-appellee.
Before STOKER, DOUCET and LABORDE, JJ.
LABORDE, Judge.
Plaintiffs, Richard and Nancy Rajnowski, individually, and in their capacity as natural tutors of their minor child, Richard Rajnowski, Jr., appeal from the trial court's judgment maintaining a peremptory exception of prescription in favor of defendant, Dr. Floyd Guidry. The sole issue on appeal is whether the trial court erred in finding that the plaintiffs' medical malpractice action had prescribed under LSA-R.S. 9:5628. We find no error. We affirm.

FACTS
Nancy Rajnowski learned she was pregnant with her first child sometime in 1982. On the recommendation of a friend, she *807 chose Dr. Floyd Guidry as her obstetrician. Dr. Guidry delivered the child by Caesarean section (C-section) on February 1, 1983. Some eight and one-half months later, the baby had its first seizure. In the following months, the baby experienced recurring seizures. On August 2, 1985, a pediatric neurologist informed Mr. and Mrs. Rajnowski that their child had neurological damage.
On August 1, 1986, plaintiffs filed a complaint with the Commissioner of Insurance, pursuant to LSA-R.S. 40:1299.47, against Dr. Floyd Guidry and St. Patrick's Hospital of Lake Charles. The complaint alleges that the defendants were negligent in their medical treatment of Mrs. Rajnowski during her pregnancy and labor and that this negligence caused the plaintiffs' child to suffer permanent brain damage. The defendants filed peremptory exceptions of prescription on the grounds that the action is time barred under the provisions of LSA-R.S. 9:5628, as it was not filed until three and one-half years after the birth of the child. The trial court granted the exceptions of prescription as to both defendants.[1]
At the time, LSA-R.S. 9:5628 provided that:
"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts." [emphasis added]
Since the suit was filed on August 1, 1986, and the alleged negligent act of Dr. Guidry occurred on February 1, 1983, we find that the plaintiffs' claim has prescribed on the face of the petition.

CONTRA NON VALENTEM
Plaintiffs contend that prescription on their action was interrupted under the doctrine of contra non valentem agere nulla currit praescriptio (prescription does not run against a party who is unable to act). This judicially-created doctrine has been applied to prevent the running of prescription in the following four situations:
(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034 (La.1987); Corsey v. State Department of Corrections, 375 So.2d 1319 (La. 1979).
It is the third category of contra non valentem which the plaintiffs argue applies to prevent the running of prescription in this case. In their second amending petition, the plaintiffs claim that Dr. Guidry withheld or concealed information concerning Mrs. Rajnowski's pregnancy, which effectively prevented them from discovering their cause of action against him, and consequently, prevented them from timely filing suit.
*808 We begin by noting that it is an unresolved issue as to whether the three year prescriptive period established by LSA-R.S. 9:5628 for medical malpractice actions can be tolled by the third category of contra non valentem.[2] This court in Ramirez v. St. Paul Fire & Marine Insurance Co., 433 So.2d 219 (La.App. 3d Cir.), writ denied, 441 So.2d 212 (La.1983) held that the doctrine is no longer applicable to prevent the running of prescription under LSA-R.S. 9:5628. Our brethren in the Fourth Circuit, however, have reached a contrary conclusion. In Harvey v. Davis, 432 So.2d 1203 (La.App. 4th Cir.1983), the Fourth Circuit held that the doctrine is still applicable to LSA-R.S. 9:5628's three year prescriptive period when the plaintiff is effectively prevented from availing himself of his cause of action as a consequence of some act of fraud, concealment or misrepresentation on the part of the defendant (i.e. the third category of contra non valentem).
The Louisiana Supreme Court has never expressly resolved this issue. In Gover v. Bridges, 497 So.2d 1364 (La.1986), the Court noted the split in the circuits, but failed to resolve the issue definitively, as it found that conditions for the third category were not met. More recently, in Whitnell v. Menville, 540 So.2d 304 (La.1989), the Court was again presented with the question of whether the third category of the doctrine tolls the statute's prescriptive period. The Court stated that its opinion in Gover "implied" that it does; nevertheless, the Court went on to indicate that it would not resolve the issue until the plaintiff was given the opportunity to allege facts that would give rise to the third category of the doctrine. We do not find it necessary to reach this particular issue, as we, like the Court in Gover, do not find that the plaintiffs have sufficiently proven that their case falls under the third category of contra non valentem.
To trigger the third category of the doctrine, a plaintiff must establish that the defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation or other ill practices) which tend to hinder, impede or prevent the plaintiff from asserting his cause of action. Nathan v. Carter, 372 So.2d 560 (La.1979); Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970); West v. Gajdzik, 425 So.2d 263 (La. App. 3d Cir.1982), writ denied, 428 So.2d 475 (La.1983). The plaintiffs allege that Dr. Guidry misled them or concealed information from them in several respects.
The plaintiffs first allege that Dr. Guidry concealed from them the fact that Mrs. Rajnowski had diabetic ketoacidosis during the final month of her pregnancy. Although this condition was never adequately defined at the hearing, evidently it involves a situation where blood sugars are degraded and produce acids which pass through the system. This condition can apparently cause fetal death or serious neonatal disorders. The plaintiffs further point out that Dr. Guidry had certain tests performed on Mrs. Rajnowski and the results of those tests indicated that she had ketones in her urine. They argue that this was a possible indication that she had diabetic ketoacidosis and that Dr. Guidry should have performed additional tests. The plaintiffs contend that, at the very least, he should have informed Mrs. Rajnowski that she might have this condition and disclosed the potential risks it posed. The plaintiffs maintain that the doctor did none of these things.
The plaintiffs also allege that Dr. Guidry misled Mrs. Rajnowski as to the reason why he performed the C-section. During her prenatal care, Dr. Guidry informed her that because of the shape and size of her pelvis she would probably not be able to deliver a child vaginally and that a C-section would be necessary. The plaintiffs point out that the reason Dr. Guidry performed the C-section was because the fetus was showing signs of fetal distress during labor. They further allege that he never informed them of this fact.
*809 Finally, the plaintiffs allege that Dr. Guidry misled them as to the cause of their child's problems at birth. Immediately after birth, the child showed signs of acute distress. At the five minute point, however, his condition had greatly improved. The child was intubated and was given oxygen. Dr. Guidry was of the opinion that the distress could have been caused by the compression of the umbilical cord which was wrapped around the baby's neck four times and was in a true knot. The plaintiffs argue that the child's distress at birth was not attributable to the problems with the umbilical cord, that Dr. Guidry knew this and that he made no effort to relate this information to them.
In response to the plaintiffs' allegations, the defendant states that he never withheld or concealed information from them. Regarding the diabetic ketoacidosis, Dr. Guidry admits that he did not tell Mrs. Rajnowski about this condition because he did not then, nor does he now believe that she had it. Dr. Guidry testified that on her seventh visit to his office he noticed that her blood sugar was elevated due to gestational diabetes. He prescribed a diet designed to control the diabetes. He also informed her that it would be necessary to deliver the baby early because there was a high death rate among gestational diabetes babies who were allowed to go to full term. Dr. Guidry stated that he was satisfied with the efficacy of the diet and, in general, with the progress the patient was making, as her urine sugar level steadily decreased. In fact, on her next to last visit the test for urine sugar was negative. On Mrs. Rajnowski's last visit, Dr. Guidry noted that her urine sugar was slightly elevated, and since they were approaching the end of the recommended 38 week gestation period, he scheduled her for induced labor on the next day.
On cross-examination, Dr. Guidry related that he was aware from the tests administered to Mrs. Rajnowski that there were ketones in her urine and that she tested positive for ketones after delivery. However, Dr. Guidry stated that it was his opinion that the ketone situation was improving during her prenatal period. As for the incidence of ketones after delivery, Dr. Guidry testified that this is a normal occurrence because of the starvation during the delivery and the immediate postpartum.
With regard to the basis for the C-section procedure, Dr. Guidry admitted that during the patient's prenatal period he did inform her of the possible need for that particular procedure due to the shape and size of her pelvis. Dr. Guidry also testified that while she was undergoing induced labor, he made the decision to proceed with the C-section because the fetal monitor strip was indicating that there was a degree of fetal distress. He further testified that he told the patient before and shortly after she underwent the procedure the reason why he decided to perform the C-section at that particular time.
Concerning the plaintiffs' final allegation that Dr. Guidry misled them as to the cause of this child's problems at birth, Dr. Guidry stated that he fully discussed with the plaintiffs the surgical procedure and the results of that procedure. He indicated that he told the plaintiffs that the cord was wrapped around the child's neck and that this was, in his opinion, the cause of the fetal distress. Dr. Guidry further related that he did not tell the plaintiffs that their child was possibly brain damaged or that the child should be monitored for signs of brain damage, as there was no clinical evidence to suggest the presence of brain damage. He explained that at the five minute point, the baby had good responses; that the amniotic fluid was clear; that the baby was not difficult to resuscitate; that the baby did not experience seizures; and that a pathological examination of the placenta after the delivery was normal. The doctor testified that in light of these objective findings, there was simply no basis for concluding that the child had neurological damage.
After a careful review of the record, we can not say that the defendant committed any acts of concealment, fraud, misrepresentation or ill practices which would have hindered, impeded or prevented the plaintiffs from asserting their cause of *810 action. Accordingly, we find that the plaintiffs' action has prescribed.[3]
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiffs.
AFFIRMED.
NOTES
[1] No appeal has been taken from the trial court's judgment maintaining the exception of prescription in favor of St. Patrick's Hospital of Lake Charles.
[2] The Louisiana Supreme Court has definitively held that LSA-R.S. 9:5628 legislatively overruled the fourth category of contra non valentem's application to medical malpractice actions. Chaney v. State Department of Health and Human Resources, 432 So.2d 256 (La.1983).
[3] We are aware of the plaintiffs' argument that Dr. Guidry negligently or inadvertently failed to disclose material information and that this activated the third category of contra non valentem. However, we determine that, under the jurisprudential standard, negligence and inadvertence are not sufficient to trigger the third category of the doctrine. See Whitnell, supra; Gover, supra; Richards v. LaCour, 515 So.2d 813 (La.App. 3d Cir.1987), writ denied, 519 So.2d 133 (La. 1988). In Richards, we held that in order for the third category of the doctrine to come into play, "a plaintiff must show that a defendant has intentionally concealed facts or engaged in fraudulent practices that lulled him into a course of inaction which prejudiced his rights." [emphasis added] Id. at 817. Furthermore, we find that the record does not adequately support the plaintiffs' claim that Dr. Guidry failed, whether negligently, or otherwise, to disclose material information.