MARVIN, Chief Judge.
In this action arising out of an alleged defectively designed and constructed addition to the LSU Medical Center in Shreveport, the State, as owner, appeals a 1990 judgment dismissing, on an exception of one year liberative prescription, its demands against the mechanical engineering firm, Bovay Engineers, Inc., who was hired by the architects of the project to design and construct the heating, ventilating and air conditioning (HVAC) system.
The action was originally instituted in 1984 against other defendants on alleged defects other than in the HVAC system. Numerous defendants and third-party defendants were thereafter brought into the action. The State joined Bovay and the architects as defendants on March 1, 1989.
Arguing applicability of the doctrine of contra non valentem, the State contends prescription should not commence to run until Bovay ceased both its attempts to remedy the alleged HVAC defects and its assurances to the State that the defects could be easily remedied or repaired, which attempts and assurances, the State suggests, continued within the year before the State joined Bovay. The State further contends, in any event, that its cause of action against Bovay is in breach of warranty and is subject to the 10-year liberative prescription, because Bovay, the professional mechanical engineer responsible for the design, construction and installation of the HVAC system, is thus legally akin to an architect or contractor. CC Arts. 2762, 3500.
We affirm.
FACTS
The State alleged that it contracted with the architects to furnish all professional services necessary to design and construct the building, who in turn
subcontracted] with Bovay ... to provide all the professional engineering services necessary to design, construct, and install the [HVAC] system of the project. * * * [and that]
The ... cause of the deficiencies in the design and installation of the system was the failure of [the architects] and Bovay ... to adequately design and properly supervise the installation of the system and failure of ... its various subcontrac *1207 tors to install the system in accordance with the design, plan and specifications.
These are the more critical dates:
December 20, 1977 — State and architects contract.
May 12, 1978 — Architects and Bovay contract.
November 7, 1980 — Contract with general contractor.
February 14, 1986 — Substantial completion occurs.
April 1987 — Responding to complaints about HVAC system during 1986, State obtains April 14,1987, preliminary report from its independent expert, who was hired a month before, stating that trouble with system arises from air balance and design problems. State makes a declaration of public emergency in April 1987 that it is necessary that there be “remedial design and construction work” on the HVAC system in the project. Meetings were held between those involved with HVAC system, including the State and Bovay, during 1987 about corrective work. Some corrective work was done during 1987 and before February 18, 1988.
August 12, 1987 — Bovay writes to architects and State, contending that prior reference to “serious design errors” is “offensive” to Bovay and that the “major problem” is in the operation of the “mixing boxes” of the system.
August 18, 1987 — Second letter of general contractor to architects, Bovay, and State attributes problem to Bovay design of HVAC system.
February, 1988 — At a February 9 meeting of those involved, State makes demands on Bovay to oversee attempts to correct HVAC problems, provoking February 17, 1988, letter response from Bo-vay to State. The Bovay response declined “to provide the services demanded by the State” unless Bovay is compensated for such services.
September, 1988 — Independent HVAC expert hired in March 1987 by State writes further report to State, again indicating defects in design.
December 16, 1988 — State’s independent HVAC expert writes final and more detailed report to State.
March 1,1989 — State institutes its action against Bovay, alleging design errors in HVAC system.
STATE’S CONTENTIONS
The State and Bovay agree that they did not contract with each other and that the State, nonetheless, has a cause of action against Bovay for its alleged defective design and installation of the HVAC system. They differ, of course, as to whether the cause of action sounds in tort, subject to the one year liberative prescription as the trial court found.
The trial court found that the State had sufficient knowledge of the claimed design defects by August 1987 to cause liberative prescription to begin running. The State contends the nature of the deficiencies in the system were “unparticularized and to some extent unknown” until the detailed report of December 16, 1988, by its independent expert “explained” to the State the deficiencies in the design.
Arguing that prescription does not begin to run until a defendant ceases activity which prevents a plaintiff from filing suit, the State says Bovay did not “cease” its efforts to remedy HVAC problems until “the spring of 1988.” Bovay counters, saying that its letter of February 17, 1988, declining to gratuitously oversee remedial work is effectively a cessation of its efforts to remedy and that the December 16, 1988, detailed report of the State’s expert is nothing more than a reiteration of “defective design” which had been generally asserted to and by the State since late 1986. Bovay emphasizes the State declared a public emergency in April 1987 on the basis that it was necessary that there be “remedial design and construction work” done on the HVAC system in the LSUMC project.
The State contends, nonetheless, that Bo-vay “lulled” it into inaction by participating in efforts to correct HVAC problems as late as February 1988 and “assured” the State that the system could be remedied by *1208 the replacement of equipment and minor adjustments in design.
RESOLUTION
The pertinent inquiry is factual: Whether the debtor’s conduct has prevented the creditor from availing himself of his cause of action. Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034 (La.1987). In either circumstance (when “prevention” ceases or “cessation” of factors warranting application of contra non valentem occurs, or when a creditor’s knowledge, actual or constructive, becomes legally sufficient for him to realize he has a cause of action), the certain date on which prescription begins to run is a factual issue to be determined by the trier of fact. We review that determination under the clearly wrong standard.
The determination of the certain date on which prescription begins to run is necessary whatever the prescription to be applied, whether the cause of action is in tort, in warranty, or arises from other legal or contractual relationships. We discuss the cause of action in the next section of this opinion.
The State knew as early as April 1987 that it was necessary that some remedial design work on the system be done. The State does not refer us to any support in the record of assurances or promises by Bovay within the year before the State filed its action on March 1, 1989, that negated or enervated the necessity for some redesign of the system, however “minor” the redesign. The State does not refer us to any support in the record that indicates that Bovay did any work to remedy problems with the HVAC system within the year before the State filed suit.
The State’s argument that Bovay “participated in efforts to remedy the deficiencies ... and as late as February of 1988, assured the State that the HVAC system could be remedied by replacement of equipment and minor adjustments in design,” is not a factually or legally sufficient basis on which we can find clearly wrong, the trial court’s conclusion that liberative prescription began to run more than one year before the date the State’s action was instituted.
ONE YEAR OR TEN?
The State suggests its cause of action, as owner, is much akin to a consumer’s action for breach of warranty of quality against a manufacturer, even though there is no contractual relationship, citing with other authority:
If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin ... on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building ...
CC Art. 2762
An action against a contractor or architect on account of defects of construction ... is subject to a liberative prescription of ten years.
CC Art. 3500
The articles of the civil code that generally provide for breach of warranty actions, such as the articles on sale, have indeed been construed to afford relief to buyers of many things, whether against either or both the manufacturer and the seller of the thing sold and warranted. Compare factually, Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972); Austin’s of Monroe, Inc. v. Brown, 474 So.2d 1383 (La.App. 2d Cir.1985), and Amin v. Head, 419 So.2d 529 (La.App. 2d Cir.1982), writ denied.
On the other hand, specific provisions have been adopted concerning the separate work done respectively by architects, contractors, and engineers for the owner of land. See LRS Title 37, Chapters 3, 8, and 24. See Civil Code Articles cited supra and Arts. 2756 et seq.; LRS 9:3141-3150. In at least one instance, where the statutory privilege on an immovable is created, a “registered engineer” and a “licensed ar *1209 chitect” are classified together. LRS 9:4801 et seq.
In all other instances, we find that the Legislature has treated these professions or trades separately from one another. The amendment to Art. 3500 in 1983 was not broadened to treat engineers as architects are treated, even though both sometimes design and construct or oversee construction of things. Even the State’s witness who qualified as an expert architectural historian acknowledged that a professional distinction between engineers and architects has existed for decades. We recognize the legal distinction.
Admitting that a contract for the benefit of another may not arise as a mere incident out of the contract, but must be intended and stipulated, the State agrees there was no express stipulation pour autrui in the contract between Bovay and the architects. Compare State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976).
CONCLUSION
The State had no contract with Bovay. The State did not buy for installation in an existing building an HVAC system from Bovay or from the architects. The State simply contracted with an architect and a general contractor for a building of a particular design that it had approved and desired at LSUMC. Bovay contracted with the architect to design, construct and install the HVAC system within the building the State contracted to have constructed. We must agree that the State’s action against Bovay sounds in tort, not in warranty or in contract, to which the one-year prescription was properly applied.
DECREE
Costs, as permitted by statute, are assessed against the State. We find no error in the trial court’s judgment, which is AFFIRMED.