711 So.2d 788 (1998)
Loretta WEBB
v.
BLUE CROSS BLUE SHIELD OF LOUISIANA.
No. 97 CA 0681.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*789 G. Brice Jones, Slidell, for Plaintiff-Appellee.
Stephanie B. Laborde, Baton Rouge, for Defendant-Appellant.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Does an insurer lull its insured into a sense of complacency sufficient to prevent the insured from filing suit when it advises her three months before prescription runs that it is reconsidering its previous denial of her claim? Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana (defendant) is appealing the trial court's affirmative answer to this question.
Defendant issued a major medical insurance policy to Loretta Webb (plaintiff), effective July 1, 1992. She was hospitalized October 31 through November 2, 1992, with chest pain. Thomas Hall, plaintiff's attending physician, indicated in plaintiff's medical records that plaintiff had a two-year history of chest pain. Timely submitted claims by plaintiff's health-care providers were consequently denied under the preexisting-condition exclusion in defendant's policy.
In January 1993, plaintiff wrote defendant, asking it to reconsider her claim and enclosing a letter from Hall. Plaintiff denied she gave Hall a history of preexisting chest pain. In June 1993, defendant sent a letter to Hall explaining the basis for denial of the claim. The letter concluded, "I do not believe that our office has made an error. However, if there is medical information that we do not have that would be offered to change our position, we would be happy to review same." On November 10, 1993, Hall wrote defendant stating his record "must be erroneous"; he asked defendant to take the correction into account and reconsider its denial of the claim. On November 15, 1993, defendant wrote Hall acknowledging receipt of his letter and stating, "As soon as our medical staff has completed their review, you will be notified of their decision." A copy of this letter was sent to plaintiff.
The record does not indicate when, if ever, defendant notified plaintiff it had denied her claim a second time. Dawn Clayton, defendant's manager, testified the claim was rereviewed and re-denied in November 1993. Plaintiff testified she concluded in June 1993 that defendant definitely was not going to honor her claim. That was when she retained counsel. She further testified, however, that it was her "impression that if the medical records were cleared up by Dr. Hall, that Blue Cross would pay the claim." She did not explain how she got that impression. She stated, "If Dr. Hall corrected that entry, that seemed to be what the main problem was, which was an erroneous entry to begin with. Yes, if he cleared [it] up, I didn't see what the problem was with the policy ... and it being paid." Plaintiff did not state when she became aware defendant had denied the claim a second time.
Under defendant's policy, plaintiff had fifteen months after services were rendered to file suit. That time period expired February 2, 1994. Plaintiff filed suit July 29, 1994, almost twenty-one months after her hospitalization. Defendant then filed an exception of *790 prescription, which the trial court referred to the merits.
After a bench trial, the court held plaintiff's condition was not preexisting and was covered by defendant's policy. The court further held the case was not prescribed, stating: "It was not until after Dr. Hall's November 1993 response that [plaintiff] could consider filing suit since she though[t] her claim was under review by [defendant]. Therefore, [plaintiff] was lulled into a sense of complacency; [defendant's] argument of prescription is barred by the doctrine of contra non valentem. [Plaintiff's] suit was timely filed."
Under the doctrine of contra non valentem agere nulla currit praescriptio, prescription does not run against a person unable to bring an action. A party excusably ignorant of a claim is not barred by prescription because one is not bound to do the impossible.[1] The doctrine prevents the running of prescription where: 1) legal cause has prevented courts or their officers from acting on or taking cognizance of plaintiff's actions; 2) a condition coupled with a contract or connected with a proceeding has prevented the creditor from acting; 3) an act of the debtor has effectively prevented a creditor from availing himself of his cause of action; or 4) a cause of action is neither known nor knowable by plaintiff even though plaintiff's ignorance is not induced by defendant.[2]
The third type of contra non is most commonly invoked today. It is applicable when the defendant conceals information or misleads and lulls the plaintiff into inaction.[3] It has been described as "an innocent plaintiff being lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of [defendant's] failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights."[4] For example, in Matherne v. State Farm Mutual Automobile Insurance Company,[5] State Farm advised plaintiff it would pay all of her damages. Two years later, after prescription had run, State Farm refused to pay her uninsured motorist claim. The court held that contra non suspended the running of prescription during the time State Farm led her to believe it would pay all her claims.
The supreme court explained in Lima v. Schmidt that "mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims" are not sufficient to suspend prescription.[6] Furthermore, Louisiana Revised Statute 22:651 provides that investigating a claim does not waive any policy defenses:
None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
....
(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.
Even if an insurer admits liability under a policy, unless it couples that admission with other acts and conduct that reasonably induce an insured to believe his claim will be settled without suit, the insurer is not *791 precluded from invoking an applicable limitation in the policy.[7] Unless the insurer in some manner leads the insured to reasonably believe the time limitation has been waived while the claim is under consideration or in some other way acts so as to induce the insured to withhold suit, the suit must be filed within the prescribed period, even if the claim is pending.[8]
The crucial determination is whether the overall actions of the insurer's representatives during the prescriptive period led plaintiff to believe reasonably that the insurer would not require compliance with the policy's prescriptive provision.[9] The heart of this inquiry is the reasonableness of the plaintiff's belief and inaction.[10] An insured must show he exercised reasonable diligence in seeking the facts[11] and asserting his rights. Prescription does not begin to run against a person who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent, or unreasonable.[12]
But the insured's ignorance of his rights alone is not enough to trigger contra non. The insured must also prove the insurer committed some act, such as concealment, fraud, misrepresentation, or other ill practice, that tended to impede or prevent the insured from asserting his cause of action.[13] Mere negligence or inadvertence on the part of the insurer is insufficient.[14]
The facts herein are very similar to those in Touro Infirmary v. Henderson.[15] In that case, Blue Cross denied a portion of Henderson's claim within the prescriptive period. Henderson appealed the denial. Six months before the prescriptive period ended, Blue Cross advised Henderson it was reviewing her claim. Approximately a year later she filed suit. The court found her claim had prescribed and contra non was not applicable. It noted she knew from the time of her hospitalization that she had a potential claim against Blue Cross. She was aware of her claim and the policy provisions. Blue Cross never told her the claim would be paid, only that it was reviewing its prior denial; it never said her claim was likely to be approved. Furthermore, no representative of Blue Cross asked her not to file suit pending the investigation she requested. Under these facts, the court found Henderson was not prevented from protecting her claim by filing suit in a timely manner.
In this case, defendant did nothing to prevent or hinder plaintiff from filing suit. Plaintiff knew in January 1993 that defendant had denied her claim. She began a letter-writing campaign to defendant and the Louisiana Commissioner of Insurance to have that decision reversed. She testified she knew in July 1993 defendant was not going to pay, which is why she retained counsel. Defendant promised her nothing more than a review of its previous denial, all the while asserting it did not believe it had erred. Although defendant agreed in November 1993, three months before the prescriptive period ended, to review its denial once more, it in no way indicated it was waiving its right to claim the fifteen-month prescription provision in the policy.
*792 The date on which prescription begins to run is a factual issue to be determined by the trier of fact. We review that determination under the clearly wrong standard.[16] We find that in this case, the trial court was clearly wrong in finding prescription began to run in November 1993. Prescription began to run November 2, 1992. Plaintiff's action prescribed fifteen months later, on February 2, 1994. Thus, her suit filed July 29, 1994, was untimely. We must reverse the trial court and render judgment in defendant's favor, dismissing plaintiff's suit.
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana and against plaintiff, Loretta Webb, dismissing plaintiff's suit. All costs are to be borne by plaintiff.
REVERSED AND RENDERED.
NOTES
[1] Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So.2d 1034, 1054 (La.1987).
[2] Brunett v. Department of Wildlife & Fisheries, 96-0535, p. 6 (La.App. 1st Cir. 12/20/96), 685 So.2d 618, 621, writ denied, 97-0186 (La.3/14/97), 689 So.2d 1385.
[3] Wilson v. City of Baton Rouge, 96-0015, p. 6 (La.App. 1st Cir.11/8/96), 683 So.2d 382, 385, writ denied, 96-2936 (La. 1/31/97), 687 So.2d 408; National Union Fire Ins. Co. v. Spillars, 552 So.2d 627, 630 (La.App. 2d Cir.1989), writs denied, 556 So.2d 61 (La.1990); Brown v. State, 354 So.2d 633, 635 (La.App. 1st Cir.1977).
[4] Matherne v. State Farm Mut. Auto. Ins. Co., 599 So.2d 816, 819 (La.App. 1st Cir.), writ denied, 600 So.2d 648 (La.1992), citing Dagenhart v. Robertson Truck Lines, 230 So.2d 916 (La.App. 1st Cir.1970).
[5] Id. at 819.
[6] Lima v. Schmidt, 595 So.2d 624, 634 (La. 1992). See also Touro Infirmary v. Henderson, 92-2720, p. 7 (La.App. 4th Cir. 12/28/95), 666 So.2d 686, 690.
[7] Brocato v. Sun Underwriters Ins. Co., 219 La. 495, 53 So.2d 246 (1951); Stephens v. Audubon Ins. Co., 27,658, p. 3 (La.App. 2d Cir.12/6/95), 665 So.2d 683, 685-686, writ denied, 96-0066 (La.2/28/96), 668 So.2d 363.
[8] Stephens v. Audubon, 27,658, p. 3, 665 So.2d at 686; Blum v. Cherokee Ins. Co., 336 So.2d 894, 898 (La.App. 4th Cir.1976).
[9] Touro v. Henderson, 92-2720, p. 7, 666 So.2d at 690.
[10] Id., 97-2720, p. 6, 666 So.2d at 689.
[11] Zidan v. USAA Property & Cas. Ins. Co., 622 So.2d 265, 268 (La.App. 1st Cir.), writ denied, 629 So.2d 1138 (La.1993).
[12] In re Medical Review Panel of Howard, 573 So.2d 472, 474 (La.1991); Griffin v. Kinberger, 507 So.2d 821, 823 (La.1987); National Union v. Spillars, 552 So.2d at 630.
[13] Rajnowski v. St. Patrick's Hosp., 551 So.2d 806, 808 (La.App. 3d Cir.1989), aff'd., 564 So.2d 671 (La.1990).
[14] Id. at 810, n. 3.
[15] 92-2720 (La.App. 4th Cir.12/28/95), 666 So.2d 686.
[16] State v. Robert E. McKee, Inc., 584 So.2d 1205, 1208 (La.App. 2d Cir.1991).